BILLY J. WILLIAMS, OSB #901366
United States Attorney
District of Oregon
**STEVEN T. MYGRANT, OSB #031293**
Assistant United States Attorney
Steven.Mygrant@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204
Telephone: (503) 727-1000
Attorneys for the United States of America

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:18-cr-00319-04-JO |
| v. | GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRE-TRIAL DETENTION |
| KENNETH EARL HAUSE, | |
| Defendant. | |

The United States of America, by and through Billy J. Williams, United States Attorney for the District of Oregon, and Steven T. Mygrant, Assistant United States Attorney, hereby requests an order to detain defendant pre-trial as he presents a danger to the community and a risk of flight or non-appearance.

**I.    PROCEDURAL BACKGROUND**

A federal grand jury has returned a superseding indictment charging defendant and five co-defendants with a long-term Racketeering Conspiracy (Count 1, 18 U.S.C. § 1962(d)). Defendant is the National President (a/k/a "the Wiz") of the Gypsy Joker Outlaw Motorcycle Club, and holds the highest rank in the enterprise.  The superseding indictment alleges several

racketeering acts as part of the RICO Conspiracy, including murder, kidnapping, robbery, extortion, drug trafficking, and witness tampering. (ECF No. 105, pages 6-7). Defendant faces up to 20 years' imprisonment on Count 1, RICO Conspiracy.

Co-defendants Dencklau, Fisher, and Pribbernow[1], already made appearances in this case on the murder and kidnapping charges, prior to the addition of the Count 1 Racketeering Conspiracy. Co-defendant Negrinelli was charged in the superseding indictment and has also made an appearance. Magistrate Judges in the District of Oregon have detained all four of those defendants as dangers to the community and flight risks. On July 9, 2018, Judge Acosta held a detention hearing for co-defendant Dencklau and ordered him detained. (ECF No. 16). On August 31, 2018, Judge Papak held a detention review hearing for defendant Dencklau, and again he was ordered detained. (ECF No. 61). On July 10, 2018, Judge Acosta held a detention hearing for co-defendant Fisher and ordered him detained. (ECF No. 18). During a review of detention on July 18, 2018, Judge Acosta again ordered Fisher detained as a danger and flight risk. (ECF No. 36). On July 16, 2018, Judge Acosta ordered detention for co-defendant Pribbernow. (ECF No. 32). On February 4, 2019, Judge Russo held a detention hearing for co-defendant Negrinelli and ordered him detained. (EFC No. 115).

## II. FACTUAL BACKGROUND

On July 1, 2015, the body of Robert Huggins (56) was found lying in a field in the 1500 block of NE 179th Street, Ridgefield, Clark County, State of Washington. I know from speaking to involved investigators that Huggins had sustained numerous injuries to his head and face, including a split upper lip. Huggins had bruising around both eyes and blood on his face

---

[1] Co-defendant Pribbernow pled guilty in November 2018 to a Superseding Information alleging a Racketeering Conspiracy, so he is not listed as a co-defendant in the Superseding Indictment (ECF No. 105).

and in his hair. Additionally, Huggins' right nipple appeared to have been cut off, and the left nipple partially cut off. Huggins had numerous lacerations and incisions to the torso, including two intersecting lacerations or incisions that cut through a tattoo on the victim's upper left chest. Huggins' torso had numerous other significant lacerations and incisions. These injuries appeared to have taken some time to inflict, and appeared consistent with torture. Huggins had lost a significant amount of blood, and possibly teeth and fragments of skin, during the course of the assault. At the autopsy, the Clark County Medical Examiner documented the numerous injuries including a broken right leg and skull fractures indicative of numerous areas of blunt force trauma to the head. The Medical Examiner ruled the cause of death to be multiple blunt and sharp force injuries.

Investigators identified the victim as Robert Lee Huggins, born in 1959. Gang investigators were familiar with Huggins (a/k/a "Bagger"), who had been a documented "patched" member of the Gypsy Jokers Motorcycle Club (GJOMC), who, within the year before his murder, was stripped of his patch and kicked out of the club for allegations that he stole from the club and broke their rules. Because of this, Huggins was "out bad" at the time of his murder.

Further investigation revealed that after being kicked out of the club, Huggins and others participated in an early June 2015 burglary and robbery at the Woodburn home of co-defendant Mark Dencklau – the President of the Portland GJOMC Chapter. In this robbery, Huggins and his co-conspirators allegedly "tied up and robbed" Dencklau's girlfriend, and stole Dencklau's property, including firearms. When a delivery-man arrived at Dencklau's home with a package, he found Dencklau's girlfriend still tied up in zip-ties, and quite distraught. She begged him to call only Dencklau, and not the police, because the GJOMC handles their own business.

Investigators obtained phone records from around the June 5, 2015 robbery at Dencklau's residence. After Dencklau received the phone calls from the delivery person, alerting him to the robbery, Dencklau placed several phone calls to GJOMC members and associates. Dencklau's first call was to this defendant GJOMC National President Kenneth Hause. The second call was to co-defendant Ryan Negrinelli, Dencklau's prospect. The third call was to co-defendant Earl Fisher. In the days and weeks following this robbery, GJOMC members including defendant Negrinelli engaged in a man-hunt for Robert "Bagger" Huggins. When they finally found him on June 30, 2015, they kidnapped him in Portland, drove him to Woodland, Washington, where they beat and tortured him to death, and then dumped his brutalized body in a field – a powerful message to anyone who dares to cross the Gypsy Joker Outlaw Motorcycle Club.

In terms of defendant's participation in the racketeering conspiracy, the evidence shows that at the time of the 2015 murder, and for more than two decades before, defendant Hause (a/k/a "The Wiz") was the National President of the GJOMC.[2] In defendant's post-Miranda interview, defendant admitted to having held the position of "Wiz" in the GJOMC enterprise. The GJOMC is known to have international chapters in Germany, Australia, South Africa, and Norway. A reference to "Germany," having unauthorized courtesy cards was found in club minutes seized from the Portland Clubhouse in a May 2016 search warrant. Evidence gathered in this case confirmed that defendant had a passport that was issued August 16, 2007 and expired August 15, 2017. Evidence obtained by the government shows travel records by Hause to Germany in August 2014. Evidence gathered during the investigation indicates that US-based GJOMC members traveled to Germany to meet with German GJOMC members and that

---

[2] In a 1992 Coos Bay Police Department report, case number 92-15587, defendant is identified as President of the Gypsy Jokers.

Australian GJOMC members traveled to the United States to meet with US-based GJOMC members.

Defendant admitted in his post-Miranda interview that co-defendant Dencklau called him right after learning that homicide victim Robert Huggins had robbed Dencklau's home and tied up Dencklau's then-girlfriend during the robbery. Defendant admitted that he received the phone call and then went to Dencklau's home where Dencklau told defendant what happened during the robbery. Defendant's post-arrest statements confirm that he knew many details of the robbery, including that Dencklau's girlfriend was tied up, and that a "UPS," guy arrived. Defendant also conceded in his post-Miranda interview that he was sure the Huggins incident was mentioned again after the day of the robbery. Less than a month after defendant went to Dencklau's residence and learned what Huggins had done, Huggins was dead. When defendant was asked in his post-Miranda interview how he would reconcile or accept seeing all the evidence the government has put together, defendant responded, in part, that he could not accept it, but that he would miss his grandkids, and said, "I knew what I signed up for I guess."

### III.    ANALYSIS

#### A.    Rules of Evidence Do Not Apply at Detention Hearing

The Federal Rules of Evidence do not apply in pretrial detention proceedings. Fed. R. Evid. 1101(d)(3); 18 U.S.C. § 3142(f). Accordingly, both the government and the defense may present evidence by proffer or hearsay. *United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986); *see also United States v. Bibbs*, 488 F.Supp.2d 925, 925-26 (N.D. Cal. 2007).

#### B.    Rebuttable Presumption of Detention Applies in this Case

Under the Bail Reform Act, 18 U.S.C. § 3142, et seq., which governs the detention of a defendant pending trial, the Court shall order a defendant detained if, after a hearing, it finds that

"no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  The United States bears the burden of establishing danger to the community by clear and convincing evidence; risk of flight need only be proved by a preponderance of the evidence.  *United States v. Aitken*, 898 F.2d 104, 107 (9th Cir. 1990);  *Winsor*, 785 F.2d at 757.

Section 3142 also provides that, subject to rebuttal by the person, "it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed … an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.)…."  In Count 1, defendant is charged with a Racketeering Conspiracy with underlying predicates to include drug trafficking (21 U.S.C. §§ 841 and 846), witness tampering (18 U.S.C. § 1512), and state offenses of murder, kidnapping, robbery, and extortion.  The statutory maximum sentence for this crime is 20 years' imprisonment, which is greater than 10 years.  Therefore, this is a presumptive detention case. 18 U.S.C. § 3142(e)(3)(a).

In this case, because of the presumption, the burden of proof shifts to the defendant to rebut the presumption of dangerousness. *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986); *cf. United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) (noting that in terrorism case involving the presumption, "the presumption shifts a burden of production to the defendant, [but] the burden of persuasion remains with the government").  Even if the presumption is rebutted, however, the presumption does not disappear, but continues to carry evidentiary weight. *See Hir*, 517 F.3d at 1086 ("The presumption is not erased when a defendant proffers evidence to rebut it; rather the presumption remains in the case as an evidentiary finding militating against release, to

be weighed along with other evidence relevant to factors listed in § 3142(g)," internal quotations and citation omitted).

A court should consider the following factors if a defendant proffers evidence to rebut the presumption of dangerousness:

> (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, and history relating to drug or alcohol abuse, supervision status at the time of the current offense; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

18 U.S.C. § 3142(g); *Hir*, 517 F.3d at 1086.    In this case, defendant is charged with participating in a violent racketeering conspiracy that includes acts involving murder, witness tampering, kidnapping, and drug distribution.    Defendant is 61 years old and faces up to 20 years' imprisonment on the RICO Conspiracy charge.    Defendant poses a flight risk and danger to the community.

### C.    Factors Supporting Detention

Defendant cannot meet his burden of rebutting the presumption that "no condition or combination of conditions of release will reasonably assure the appearance of the person as required and the safety of the community."    But even if the Court finds that defendant has met his burden of rebutting the presumption against release with whatever proposed release plan he intends to submit—and it should not—the government asserts the factors from 18 U.S.C. § 3142(g) require detention here.

#### 1.    Nature and Circumstances of the Offense

The nature and circumstances of this offense weigh heavily in favor of detention. The indictment in this case alleges defendant participated in the affairs of an enterprise that engaged in acts involving murder, witness tampering, kidnapping, and other acts of violence. Notably, defendant is the National President and ultimate leader of the GJOMC enterprise that committed the crimes alleged in the indictment, and specifically for the Gypsy Joker Outlaw Motorcycle Club (the enterprise).

### 2. Weight of the Evidence

The weight of the evidence is strong and supports detention here. This indictment arises from a long-term federal investigation that includes numerous witness statements, surveillance video, eyewitness testimony, phone toll records, cell tower location records (obtained with search warrants), co-conspirator statements, and post-arrest admissions by defendant.

### 3. History and Characteristics of the Defendant

According to his criminal history, defendant was convicted on July 7th, 1998 of Assault in the 4th degree and Contempt of Court and sentenced to 365 days in jail and 36 months of probation. On July 27th, 1999, defendant was convicted of Assault in the 4th degree (Domestic Abuse) and Probation Violation and was sentenced 60 days in jail and 36 months of probation. On September 25th, 2002, defendant was convicted of Probation Violations for Assault in the 4th Degree and Felon in Possession of a Firearm, and was sentenced to 30 days in jail. On March 6, 2003, defendant was convicted of Probation Violations for Assault in the 4th Degree and Felon in Possession of a Firearm, and was sentenced to 13 months in prison and 24 months of post-prison supervision. On July 7, 1998, defendant was convicted of Contempt of Court for Assault in the 4th Degree and Criminal Trespassing in the 2nd Degree, and was sentenced to 36 months of probation. Defendant's criminal history indicates a history of poor performance on

supervision. This is merely one factor for the Court to consider, in conjunction with the other factors that weigh against release.

A phone call with Marion County Parole and Probation revealed defendant had 6-7 violations for while on post-prison supervision. The violations included use of methamphetamine and contact with Gypsy Joker associates despite an order precluding such contact.

### 4.  Nature and Seriousness of the Danger if Released

The superseding indictment alleges that this racketeering enterprise is a criminal organization whose members engage in offenses involving narcotics trafficking and acts of violence involving murder, robbery, extortion, firearms offenses and obstruction of justice. (ECF No. 105, ¶ 14). Members of the enterprise share a common purpose to preserve and protect their territory through the use of intimidation, violence, and threats of violence. (ECF No. 105, ¶ 12a-b). Specifically, the grand jury alleged this enterprise keeps victims, witnesses, and community members in fear of GJOMC members and associates through threats of violence and actual violence. (ECF No. 105, ¶ 12d). Thus, the government is concerned that if released, this defendant will engage in conduct the Bail Reform Act cites as problematic: the obstruction or attempted obstruction of justice through acts of violence or intimidation towards prospective witnesses. 18 U.S.C. § 3142(f)(2)(B).

The charged racketeering enterprise - the Gypsy Joker Outlaw Motorcycle Club (GJOMC) - has already attempted to find a key witness in this investigation, prompting law enforcement to relocate the witnesses out-of-state. Prior to the state indictment in 2016, co-defendant Dencklau sent two Gypsy Joker members to find his ex-girlfriend who had moved to a hotel in Salem. When approached, she called the police in a frenzy to ask for help and

protection from these violent individuals. In the recorded call, she said she feared retaliation because she knew too much about a murder directed by her ex-boyfriend, co-defendant Dencklau.

During a search warrant executed at defendant's Aumsville, Oregon residence on January 30, 2018, law enforcement located a photo of a white male that had the word, "snitch," written on it. During this investigation, the government has uncovered occurrences of the GJOMC engaging in witness tampering and threats of violence toward witnesses. In this context, this photo, discovered just this past week, is gravely concerning. There is simply no benign reason defendant would possess this photo with the handwritten word snitch written on it.

Defendant has served as the National President and "Wiz," of the GJOMC for decades. As the principal leader of the GJOMC, defendant has the ability and resources to direct others to engage in obstructive activity or to order that acts of violence be carried out, as he is alleged to have done in the Superseding Indictment. (ECF No. 105, page 12). Keeping defendant in custody pending trial will restrict his access to these resources and ensures that whatever plans he may have to obstruct justice can be monitored by investigators and jailors.

## IV. CONCLUSION

In summary, the relevant inquiry for the court is whether there are conditions that can be placed upon defendant that will reasonably assure the safety of the community and defendant's appearance in court. Here, there are no conditions that can reasonably assure the safety of the community and defendant's future appearance in court. If released "on conditions," defendant's history with this group, the violent acts towards witnesses and enemies, and the nature of the instant offense demonstrate that he is a danger to the community. He faces lengthy sentencing exposure, particularly for a 61 year-old, so he has a significant incentive to flee. Defendant's

leadership role in a violent enterprise also increases the risk that he will continue to engage in witness tampering, obstruction, and possible violence towards witnesses and co-conspirators in this case. Accordingly, the government respectfully requests that the Court detain defendant pending trial.

Dated: February 6, 2019                    Respectfully submitted,

                                           BILLY J. WILLIAMS
                                           United States Attorney

                                           */s/ Steven T. Mygrant*
                                           STEVEN T. MYGRANT, OSB #031293
                                           Assistant United States Attorney